

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States Attorney's Office*
*50 Main Street, Suite 1100*
*White Plains, New York 10606*

September 7, 2024

**BY ECF**

The Honorable Kim P. Berg
United States Magistrate Judge
Southern District of New York
United States Courthouse
300 Quarropas Street
White Plains, NY 10601

     Re:   *United States v. Anthony Bianchi*, 24 Cr. 483 (KPB)

Dear Judge Berg:

     Following the conference on September 4, 2024, the defense provided the Government with a list of potential witnesses and the topics of their anticipated testimony. Based upon that proffer, the Government respectfully moves to preclude: (1) opinion testimony from witnesses, other than the defendant, that the defendant was unlawfully asked to submit to a blood alcohol content ("BAC") test; and (2) habit testimony from witnesses, who were not present during the defendant's alleged failure to stop at an access control point near Thayer Gate (the "ACP"), that the guards routinely allowed the defendant to pass through the ACP without stopping to show his military ID. In addition, because the defense has advised that it may elicit testimony that the defendant asked for an attorney when refusing to submit to a BAC test, the Government respectfully requests: (3) permission to elicit the defendant's request for counsel in the Government's case-in-chief, with an immediate limiting instruction to the jury.

     **I.**     **Relevant Background**

     In the early morning of July 23, 2023, at approximately 12:39 a.m., the defendant drove towards the ACP, where a posted stop sign directed vehicles to stop and where a gate guard waited to scan the defendant's military ID. Surveillance video footage captured the defendant drive through the ACP without stopping for the stop sign or gate guard. As the defendant drove off, the surprised gate guard threw up his hands, ID scanner still in hand.

     Approximately two hours later, military police officers transported the defendant from his residence to the Provost Marshal's office, where he was placed in an interview room. At approximately 3:18 a.m., Sergeant Richard Morales, a military police officer, asked the defendant to take a BAC test. The defendant refused, stating that he wanted a lawyer. At approximately 4:00 a.m., Sergeant Morales again asked the defendant to consent to a BAC test, and the defendant again refused. Finally, at approximately 4:40 a.m., Captain Molly Williams ordered the defendant to provide a blood sample for a BAC test. The defendant declined.

By order dated August 23, 2024, the Court ruled that the "Government's Motion to permit the introduction of evidence of Defendant's refusal to submit to a blood, breathalyzer and/or chemical test is Granted and Defendant's Motion in Limine to preclude same evidence is Denied." (Dkt. 70 ¶ 4).

## II.   Opinion Testimony Regarding the Lawfulness of BAC Test Requests

In its witness list, the defense advised that Command Sergeant Major Michel Fraser "can testify that CPT Williams had no legal authority to give defendant an order to submit to blood test." The Government informed the defense that it no longer intended to call Captain Williams but will still offer evidence that the defendant refused requests by the military police to submit to a BAC test. The defense responded that it believed these requests were also unlawful but did not specify on what ground.[1] Based on the defense proffer of Command Sergeant Major Fraser's testimony, the Government anticipates that the defense may attempt to elicit similar third-party opinion testimony that the military police lacked authority to ask the defendant to submit to a BAC test. Because such testimony is not probative of any issue properly before the jury, it should be precluded.

Whether the military police could lawfully ask the defendant to take a BAC test is a legal question for the Court, not the jury, to decide. "It is the province of the court to instruct the jury as to the principles of law affecting the case, and counsel cannot appeal to a jury to decide legal questions by reading cases to them, or giving in evidence the opinions of public officers." *Roberts v. Cooper*, 61 U.S. 467, 481 (1857).[2] This Court has already held that the jury may consider the defendant's refusal to submit to a BAC test; the defendant cannot appeal to the jury to reverse the Court's determination through opinion testimony challenging the legality of the conduct of the military police. Indeed, even as to legal *experts*, "every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law." *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (collecting cases); *see also Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion."); *Davis v. City of New York*, 959 F. Supp. 2d 427, 435 (S.D.N.Y. 2013) ("[N]either expert nor lay witnesses may present testimony in the form of legal conclusions.").

To be sure, evidence that the defendant *believed* — rightly or wrongly — that the military police lacked authority to order him to take a BAC test could be admissible to rebut the inference of consciousness of guilt. The defendant is free to testify, for example, that he refused to take a BAC test not because he believed he was drunk, but because he believed himself beyond the

---

[1] In his motions *in limine*, the defendant argued that his refusal of "the request of the Military Police that he submit to a breathalyzer" was inadmissible under New York and federal rules of evidence, (Dkt. 63 at 1), but did not challenge the authority of the military police to make the request.

[2] Unless otherwise specified, all case quotations omit internal quotation marks, citations, and prior alterations.

authority of the military police. But the legal opinion of third parties does not shed light on the defendant's state of mind at the time of his refusal, and is therefore irrelevant and inadmissible under Federal Rules of Evidence 401 and 402. Even if such opinion testimony had some marginal relevance (and it does not), that minimal probative value would be far outweighed by the dangers of unfair prejudice, confusing the issues, and misleading the jury because it would imply that the jury, rather than the Court, should determine the legality of the conduct of the military police. The legal opinion of third-party witnesses should therefore also be precluded under Rule 403.

### III. Habit Testimony Regarding ACP Procedures

In its witness list, the defense identified four witnesses who may testify that the defendant, as Garrison Commander, was not always required to show his military ID at the ACP. Specifically, the defense proffered that: (1) Command Sergeant Major Fraser will "validate defendant was not required to show ID when he was driving gov vehicle;" (2) Lieutenant Colonel (Retired) Brian Heverly, a former Director of Emergency Services at West Point, may "talk visual recognition versus written SOP and clarify Policy Letter #13, dated 12 Dec 2022;"[3] (3) Forest Pitt, a civilian gate guard, will "testify about accepted procedure, as opposed to written SOP, at the Thayer Gate Checkpoint" and will "validate that defendant was not required to show ID when defendant was driving his government vehicle with GC placard;" and (4) Lieutenant General (Retired) Robert Caslen, a former superintendent of West Point, may testify as to unspecified "procedure and protocol." None of this testimony goes to the relevant issue: whether a traffic or police officer directed the defendant to disregard the stop sign on the charged occasion.

New York Vehicle & Traffic Law, Section 1110(a) provides that a driver may disobey a traffic-control device if "directed by a traffic or police officer." None of the witnesses proffered by the defense was present when the defendant allegedly disobeyed the stop sign at the ACP in the early hours of July 23, 2023. None, therefore, can offer percipient witness testimony as to whether a traffic or police officer actually directed the defendant to disregard the stop sign that night.[4]

---

[3] U.S. Army Garrison West Point Policy #13 ("West Point Access Control Policy"), which is marked as Government Exhibit 3, was a policy issued by the defendant in his capacity as Garrison Commander that was in force at the time of the charged conduct. In relevant part, the policy provides that "[s]ecurity personnel verify the ID of all persons attempting to enter the installation through the Visitor Control Center (VCC) and West Point Access Control Points (ACPs)," (GX 3 ¶ 3(c)), and that "[a]ll persons age eighteen (18) and over or drivers must present photographic (photo) ID for access onto West Point," unless escorted by someone with a Department of Defense ID, (GX 3 ¶ 4(a)). If the Court precludes the contested habit evidence, the Government will not offer Government Exhibit 3 in its case-in-chief.

[4] Because Section 1110(a) is a strict liability offense, it is immaterial whether the defendant *believed* he was authorized to disregard the stop sign. *See Evans v. City of New York*, No 12 Civ. 5341 (MKB), 2015 WL 1345374, at *24 (E.D.N.Y. Mar. 25, 2015) ("The first way in which the misdemeanor acquittal offenses have different elements from the traffic infractions is in the misdemeanors' *mens rea* requirements, which is something that the government does not have to prove in order to establish a traffic infraction.").

The proffered testimony is only relevant, therefore, if it meets the requirements of Federal Rule of Evidence 406, which provides that "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." As an initial matter, it is entirely unclear whether the proffered testimony even addresses whether the defendant was required to stop at the *stop sign*, as opposed to whether he was required to *show his ID*. While a requirement to show and scan ID implies a requirement to stop at the stop sign — the gate guard's booth at the ACP adjoins the stop sign — the converse is not true. In other words, even if the defendant was routinely exempt from showing his ID, that does not mean that he was routinely directed to disobey the stop sign. The proffered testimony allows for the possibility, for example, that the defendant was required to stop at the stop sign for "visual recognition" before continuing without showing his ID.

Even assuming *arguendo* that the defense witnesses would testify that there was a practice of guards to direct the defendant to disregard both the posted stop sign and the requirement to present ID, the defense has not met the requirements to introduce such habit evidence under Rule 406. "A party offering evidence of habit must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Pena v. Macy's Inc.*, No. 22 Civ. 9435 (PMH), 2024 WL 1833880, at *1 (S.D.N.Y. Apr. 26, 2024). "Although a precise formula cannot be proposed for determining when the behavior may become so consistent as to rise to the level of habit, adequacy of sampling and uniformity of response are controlling considerations." *Zubulake v. UBS Warburg LLC*, 382 F. Supp. 2d 536, 542 (S.D.N.Y. 2005).

Here, the defense has provided no specific information about the conditions under which guards would supposedly exempt the defendant from showing his ID (and disobey the stop sign), much less evidence of the "frequency of uniform response." Simply put, the defense has not carried its burden of showing the existence of a habit. And it is doubtful that the defense can meet that burden. Yesterday, the Government interviewed one of the defense witnesses, Mr. Pitt, a civilian guard who has regularly worked at the West Point ACP for the last four years. Contrary to the defense proffer, Mr. Pitt advised that the standard practice is for drivers to stop at the stop sign and show their military ID to the guard — with no exception for the Garrison Commander or for government vehicles. Mr. Pitt explained that if a driver forgot his or her military ID, but the guard recognized the driver as someone with access to West Point, the guard could allow the driver to pass through the ACP as an exception. On West Point overall, Mr. Pitt estimated that he extended such an exception up to 15% of the time. But Mr. Pitt advised that the defendant very rarely required such an exception and almost always showed his military ID. Mr. Pitt recalled that having encountered the defendant at West Point checkpoints on at least 100 occasions, the defendant forgot his ID and required an exception no more than 5 times.

Because the proffered testimony is irrelevant to what happened on the charged occasion under Rules 401 and 402, and does not meet the requirements of habit evidence of Rule 406, the Court should preclude testimony that guards habitually allowed the defendant to pass through the ACP without stopping to show his military ID.

### IV. The Defendant's Invocation of His Right to Counsel

The defendant has a constitutional right to counsel, and the Government may not "urg[e] the jury to infer [his] guilt from . . . his invocation of his right to counsel." *United States v. Matthews*, 20 F.3d 538, 552 (2d Cir. 1994).  To avoid any misunderstanding, the Government would strongly prefer not to elicit any testimony that the defendant requested an attorney at the PMO in the early hours of July 23, 2023, and instead instruct its witnesses that when asked whether the defendant agreed to take a BAC test, the witnesses should state only that the defendant refused. The defense has informed the Government, however, that it may elicit the defendant's invocation of his right to counsel, apparently for the purpose of arguing that the defendant refused the BAC test not because he knew he was intoxicated, but because he wished to speak with an attorney first.

If the jury learned for the first time on cross-examination or in a defense case that when asked to take a BAC test, the defendant invoked his right to counsel, it would create the misleading impression that the Government hid a material fact from the jury.  The Government therefore requests permission to elicit the defendant's request for counsel in the Government's case-in-chief, to be immediately followed by a limiting instruction from the Court:

> You have heard testimony that in response to a request to submit to a blood alcohol test, the defendant refused the test and requested an attorney.  Although the witness has testified that these things happened at the same time, they are separate concepts.  I instruct you that the defendant has a right to counsel and that you may draw no negative inference from his request for an attorney.  You are permitted but not required, however, to draw a negative inference from the defendant's refusal to submit to a blood alcohol test.  I will instruct you further on this topic before you deliberate.

*See Matthews*, 20 F.3d at 553 (no prejudice from testimony and summation regarding the defendant's invocation of counsel where court instructed that the defendant "has a constitutional right to make that request for an attorney at any time and you may draw no negative inference from his assertion of that right").  The Government will in no way argue that the defendant's request for counsel makes him guilty, but if the defendant suggests to the jury that he refused the BAC test because he wished for counsel, the Government must be permitted to argue that inference is false.  *Cf. id.* at 552 ("Thus, while comment on a defendant's silence is usually improper, such comment may be permissible when the defendant, by the impression he has sought to create, has opened the door.").

### V. Conclusion

For the foregoing reasons, the Court should:  (1) preclude the defense from offering legal opinion testimony from witnesses, other than the defendant, that the defendant was unlawfully asked to submit to a BAC test; (2) preclude the defense from offering habit testimony that West Point guards routinely allowed the defendant to pass through the ACP without stopping to show his military ID; and (3) permit the Government to elicit the defendant's request for counsel in the

Government's case-in-chief, with an immediate limiting instruction to the jury, unless the defendant agrees not to introduce his request for counsel in cross-examination or a defense case.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/
Jared D. Hoffman
Alexander N. Li
Assistant United States Attorneys
Southern District of New York
(914) 993-1928 / (212) 637-2265

Andrea L. Mills
Special Assistant United States Attorney
Southern District of New York